AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Alaska

RECEIVED
FEB 1 1 2014
CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

| | |
|---|---|
| United States of America<br>v.<br>NOBUYA MICHAEL OCHINERO<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 3:14-mj-00049-DMS<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 10, 2014__ in the county of _____ in the _____ District of __Alaska__, the defendant(s) violated:

*Code Section* | *Offense Description*
---|---
49 U.S.C. 46504 | Interference with Flight Crew Members and Attendants

This criminal complaint is based on these facts:
See attached affidavit, incorporated by reference herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Angela M. Strause, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

**REDACTED SIGNATURE**

Date: __02/10/2014__

_____
*Judge's signature*

City and state: __Anchorage, AK__    Deborah M. Smith, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **ANGELA M. STRAUSE**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint against NOBUYA MICHAEL OCHINERO for a violation of 49 U.S.C. § 46504 (interference with flight crew members and attendants).

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been since February of 2010. Pursuant to my duties as an Agent with the Joint Terrorism Task Force (JTTF) and, most currently as a member of the Violent Crimes (VC) Squad, I have investigated a number of violations of the United States Code. I also have been designated as an Airport Liaison Agent in order to provide agency assistance and address matters involving criminal acts occurring on aircraft within the jurisdiction of the United States.

3. I am familiar with the information contained in this affidavit based upon the investigation I have conducted, which included conversations with law enforcement officers, interviews of eyewitnesses and victims and an interview of the subject.

4. Any facts or circumstances cited in this affidavit are from my personal knowledge, other law enforcement officials, or from those specific sources as set forth. Not all facts known to me are contained within this affidavit. Only those facts I believe relevant to the Court's probable cause determination are included.

## PROBABLE CAUSE

5. On 02/10/2014, I received a telephone call from the Ted Stevens International Airport Watch Commander at approximately 12:40 a.m. regarding a combative passenger who

had allegedly assaulted several passengers and members of the flight crew on board All Nippon Airways (ANA) international flight NH 10 (also referenced as United Airlines flight UA 9735).

6. Flight NH 10/UA 9735 was scheduled as a direct flight from Narita Airport, Tokyo, Japan, to John F. Kennedy Airport, New York City, New York. This Boeing-777 aircraft was diverted to Ted Stevens International Airport (hereafter "Anchorage Airport") in Anchorage, Alaska, after the combative passenger – NOBUYA MICHAEL OCHINERO – had to be physically restrained by the flight crew with the assistance of several passengers.

## INTERVIEWS

### Interview with NOBUYA MICHAEL OCHINERO

7. On 02/10/2014, I arrived at the North Terminal of Anchorage Airport at approximately 1:12 a.m. NOBUYA MICHAEL OCHINERO was handcuffed and seated in an Airport Police interview room. I read the Advice of Rights form to OCHINERO at 1:15 a.m., in the presence of Airport Police Officer Meade. OCHINERO said he understood his rights and agreed to answer questions. OCHINERO provided the following information:

   a. OCHINERO said he has dual citizenship in Japan and the United States.

   b. OCHINERO stated that he consumed approximately four (4) shots of "straight gin" and two (2) beers during the flight.

   c. OCHINERO said that he became upset and yelled at the flight attendants when they refused to serve him more alcohol.

   d. OCHINERO said he "pushed" the flight attendants because "I didn't want them to touch me."



FEB 1 0 2014

Page 2 of 9

Case 3:14-cr-00014-SLG   Document 1   Filed 02/10/14   Page 3 of 10

8. Upon conducting a search of OCHINERO's carry-on baggage, Airport Police Officers noted approximately 58 individual packets of pills as well as numerous other pills and medications.

9. OCHINERO stated that the pills were his and were used to treat psychosis, schizophrenia, bi-polar disorder and gout.

### *Interview with M.I. – Chief Purser / Cabin Attendant*

10. On 02/10/2014, I interviewed M.I., who is employed by ANA as Chief Purser and Cabin Attendant.

11. M.I. said that OCHINERO had consumed two (2) double shots of gin and one (1) beer. When OCHINERO was refused more alcohol, he became belligerent and pulled M.I.'s scarf which was tied around her neck. M.I. estimated that OCHINERO started becoming very aggressive approximately three to four hours into the flight.

12. M.I. stated that OCHINERO physically pushed her and screamed obscenities directly in her face.

13. M.I. said she was very frightened of OCHINERO because his actions toward her were violent and unpredictable.

### *Interview with A.O. – Cabin Attendant*

14. On 02/10/2014, I interviewed A.O., who is employed by ANA as a Cabin Attendant.

15. A.O. said that OCHINERO physically struck her two times and pushed her while she was trying to calm him down. A.O. said she was frightened of OCHINERO.

16. A.O. provided the seat numbers of three (3) passengers who assisted the cabin attendants in restraining OCHINERO.

FEB 1 0 2014

17. A.O. placed OCHINERO's hands in zip-tie style handcuffs and also assisted the aforementioned passengers in restraining OCHINERO around the chest area using zip-ties, which were then secured around the seat back.

### *Interview with S.K. – Cabin Attendant*

18. On 02/10/2014, I interviewed S.K., who is employed by ANA as a Cabin Attendant.

19. S.K. stated that she observed OCHINERO, who was seated in 35E, verbally abuse numerous passengers using obscenities and racial slurs and physically assault passengers by pushing them or spitting on them.

20. S.K. said that she and several other Cabin Attendants asked some of the passengers for assistance when they realized they could not physically restrain OCHINERO. S.K. stated that three (3) passengers in particular were very helpful despite the fact that each of them had been struck by, screamed at and/or spit on by OCHINERO as they attempted to restrain him.

21. S.K. said that OCHINERO attempted to hit her and also tried to push her, but his efforts were blocked by one of the passengers.

22. S.K. said she was frightened by OCHINERO's unpredictable actions. She became even more concerned when OCHINERO stayed in the bathroom for a very long time, because he was already drunk and belligerent and they were not certain what he was doing behind the closed door.

//

//


### Interview with M.H. – Cabin attendant

23. On 02/10/2014, I interviewed M.H., who is employed by ANA as a Cabin Attendant.

24. M.H. said that, when she tried to calm OCHINERO down, he became aggressive and swore at her. OCHINERO also pushed her.

25. M.H. said she was scared of OCHINERO and noted that his eyes seemed "strange" and bloodshot. M.H. could smell alcohol on OCHINERO's breath and she believed he may have been drinking before the flight had departed Tokyo.

### Interview with N.S. - Passenger

26. On 02/10/2014, I interviewed N.S., who was the passenger seated directly to the left of OCHINERO. (N.S. spoke no English. Therefore, Cabin Attendant S.K. provided translation.)

27. N.S. said that throughout the flight, OCHINERO was talking very loudly and screaming obscenities, some of which were directed at N.S.

28. N.S. said that OCHINERO spit on her and others around her. He also hit her arm and pushed her.

29. During the flight, OCHINERO attempted to step over N.S. in order to get out of his seat. Instead of excusing himself and asking her to stand up, he faltered and almost fell into her lap.

30. N.S. said that OCHINERO also yanked her cell phone cord from the charger during the flight.

31. N.S. observed OCHINERO pull things out of the seat pocket located directly in front of him. OCHINERO then threw the items at passengers seated around him.

32. N.S. observed OCHINERO hit the seat in front of him so hard he caused the tray table to break.

### *Interview with C.L. – Passenger*

33. On 02/10/2014, I conducted an interview with passenger C.L., the passenger originally seated in 34F.

34. C.L. stated that he heard OCHINERO making strange noises while seated behind him and he also heard OCHINERO spitting on the floor.

35. C.L. said that, at some point during the flight, he got up to allow the passenger seated next to him to go to the restroom. C.L. remained standing during that time and OCHINERO began yelling at him, using obscenities and telling him to sit down.

36. After C.L. returned to his seat, OCHINERO struck C.L.'s seat and also struck him in the head.

37. As a result of these interactions, C.L. requested a seat change and the cabin attendants accommodated that request.

### *Interview with J.M. - Passenger*

38. On 02/10/2014, I conducted an interview with passenger J.M. (J.M. spoke no English. Therefore, Cabin Attendant S.K. provided translation.)

39. J.M. said that he noticed OCHINERO screaming at others and intentionally sneezing so that he could spit on the people sitting around him.

40. J.M. observed OCHINERO pushing violently and repeatedly on the seat in front of him.

41. J.M. also saw the female passenger sitting next to OCHINERO [N.S.] begin crying as a result of OCHINERO's actions.

42. J.M. noticed that OCHINERO was sweating and was extremely belligerent toward anyone who approached him.

43. J.M. said he was asked by the Cabin Attendants to assist in restraining OCHINERO and he agreed to help.

44. As J.M. was attempting to provide assistance to the Attendants, OCHINERO spit on him, grabbed his head and hair, and then tried to punch him, but J.M. was able to avoid the blow.

### *Interview with A.F. - Passenger*

45. On 02/10/2014, I conducted an interview with passenger A.F.

46. A.F. said that he heard a commotion coming from several rows in front of him.

47. A.F. said he was asked by Cabin Attendants to assist them in restraining OCHINERO and he agreed to help.

48. As A.F. was trying to restrain him, OCHINERO spit on him and repeatedly yelled racial slurs at him. OCHINERO also struck A.F. and kept grabbing his head.

### *Interview with T.H. – Passenger*

49. On 02/10/2014, I conducted an interview with passenger T.H.

50. T.H. recalled that OCHINERO was "rude" the moment he got on the aircraft. He stated that, during the flight, he observed OCHINERO "throwing a tantrum" in his seat and also slapping the seat in front of him.

51. T.H. said that OCHINERO then began "pretend coughing", noting that "it was only so that he could spit on the guy in front of him."

FEB 1 0 2014

52. T.H. recalled that OCHINERO went to the bathroom and locked himself in there for approximately 45 minutes. Upon returning to his seat, T.H. observed OCHINERO hit the girl sitting to his left (N.S.).

53. T.H. said that Cabin Attendants asked if he would be willing to help restrain OCHINERO and he agreed to assist them.

54. As T.H. was attempting to restrain him, OCHINERO spit on him and struck him in the face. T.H. also observed OCHINERO try to slap/hit one of the other passengers who was helping to restrain him, but he (J.M.) ducked and OCHINERO instead hit a Cabin Attendant.

55. T.H. recalled that when they tried to handcuff him, OCHINERO "freaked out", but eventually the three passengers (J.M., A.F. and T.H.) were able to hold him down while OCHINERO's hands were cuffed. OCHINERO was also restrained with zip ties, which were secured across his chest and then behind his seat.

//

//

//

//

//

//

//

//

FEB 1 0 2014

## CONCLUSION

56. At approximately 3:41 a.m., FBI agents and Airport Police officers transported OCHINERO to the Anchorage Correctional Complex. Upon OCHINERO's arrival, jail staff tested his blood alcohol level and found it to be 0.137.

57. OCHINERO's conduct on the plane, as described herein, interfered with the performance of the duties of members of the flight crew, including flight attendants and others as outlined above.

58. Based on the above information, I believe there is probable cause that NOBUYA MICHAEL OCHINERO has committed a violation of 49 U.S.C. § 46504 (interference with flight crew members and attendants).

SIGNATURE REDACTED

ANGELA M. STRAUSE
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 10th day of February, 2014

/S/ DEBORAH M. SMITH
U.S. MAGISTRATE JUDGE
SIGNATURE REDACTED

HONORABLE DEBORAH M. SMITH
United States Magistrate Judge

FEB 1 0 2014

Page 9 of 9

Case 3:14-cr-00014-SLG   Document 1   Filed 02/10/14   Page 10 of 10